315-0140 People of the State of Illinois, Appalachia by Mark Roscoe v. DeBusschere Mr. DeBusschere, appellant by Roxanna Mason. Ms. Mason. May it please the court. Good afternoon your honors counsel. My name is Roxanna Mason, I'm from the office of the State Appellate Defender and I represent Mr. Jason DeBusschere. Mr. DeBusschere's case presents four distinct issues. However, my intention today, barring questions from the court about the other issues, is to focus on two of them primarily. The first being the first issue raised in the briefs, the trial prosecutor's attempt at trial by insinuation. And then the second issue being the third issue raised in the briefs, the Krenkel issue, that the trial court failed to conduct a proper Krenkel inquiry into one of Mr. DeBusschere's allegations of ineffective assistance of counsel. Now, first with regards to the first issue, whether there was air here or not really isn't that much of a dispute. The defense in this case was simply that Mr. DeBusschere did not actually possess the marijuana in question, the marijuana that was found in a safe in his then girlfriend Elizabeth Boaz's apartment. And the key of his defense in this was Elizabeth Boaz's testimony. She testified that she had recently obtained the safe from a third party, a cousin of a friend named Jay, and that she did not yet have the combination or the keys to this safe. So there was no way for her or for Mr. DeBusschere to get into the safe. Then on cross-examination, the prosecutor asked her a series of questions insinuating that some photograph of her was found inside the safe and that there was no reason for this Jay character to have such a photograph, thus leading to the implication that her and Mr. DeBusschere must have been able to access the contents of the safe and thus exercise dominion and control over the marijuana contained therein. Now the problem is the prosecutor didn't have any evidence to back this up. He did not make any efforts throughout the entire course of the trial to perfect this impeachment. This on its face is air. There may hypothetically be some evidence out there in the ethers, although I would imagine if the prosecutor had the evidence, there may be. But since the prosecutor has an ethical obligation to comport with the rules and to perfect the impeachment, and he didn't, then if this photograph does exist out there somewhere in the ethers, then we're presuming something pretty unethical about the prosecutor. The prosecutor here did not, within our record, there's no evidence establishing that this photograph exists. So this is air. And we're really only looking at the question of whether this is plain air or not since trial counsel failed to object when the prosecutor made these insinuations. And the case on this is pretty clear that where we're coming down to a credibility contest, as was the case here, then we have first prong plain air. Here this case came down to whether the jury believed... First you have plain air. You've got to argue it's plain air. Then the question is whether it's reversible or not. And is it reversible on the basis of two prongs? Yes. Yes. And here we have both of those prongs of plain air. First, the clear air occurred. That's established by McCoy. That's established by Robertson and Rivera. This is an obvious and evident air. It's been well established for years that prosecutors have to perfect their impeachments. So that leads us to the second prong of plain air, whether it was closely balanced or not since we're looking at first prong plain air. And here, because there was a credibility contest and the case came down simply to the credibility of Ms. Boaz, the jury believed her. They vote not guilty. If they don't believe her, then they can vote guilty. That is why we've established that second step of the plain air analysis. Which is whether it's reversible. Which is whether... Plain air is very simple. Look at the language. It's plain. It's easy to see that was air. Under the law, that is air. Yes. Now the question is, is it reversible air or is it harmless? And the only way you can determine that conclusion is to do two analyses. One, is it structural? Or two, is it prejudicial because of closely balanced evidence? And here we are using the first prong, the closely balanced evidence prong, because this came down to a credibility contest. To determine if it's reversible. Yes, to determine whether this court should... It's linguistically to be simple and plain. Which is always good with plain air. The fact that we have here that this is this credibility contest, and this court already held in Sanchez, the Illinois Supreme Court's held in Naylor, that when we have these credibility contests, first prong's met. Therefore, the air is reversible, despite the forfeiture by counsel, and Mr. Debeshear should get a new trial. It's as simple as that. It's as plain as that. Now... What about Belknap? What about... Belknap, wasn't that a, he said, she said case too? I'm not as familiar with Belknap, but the closer cases here, particularly in light of the Illinois Supreme Court's most recent holdings regarding plain air, are the credibility contests that the only issue in a first prong case is whether the evidence is closely balanced or not. And here we have... It's not really a he said, she said. It's just a she said. And do you believe her or not? So Belknap is a he said, she said where we have a credibility contest between two people. Here, it really comes down to just one witness. So that would be a distinction between a he said, she said. This is just a she said. Do you believe her or not? And my guess is most people do not. But that's not for us to decide. She's got a safe full of dope in her house. And testimony is, but I don't have the combination. And they find other dope, her family, they find drugs on him, which can change. So, I mean, if you think a jury's going to believe that... Well, it's not quite as cut and dry as that. But in terms of the dope found on him, that's a small personal use quantity of marijuana found on him months later when he's arrested. He wasn't in the home when this raid occurred. And then also in terms of the other paraphernalia found throughout the house, there's certainly evidence that drug use was going on in this house that was leased by Elizabeth Boaz and that tons of people were in and out of. There's a big leap, though, between Jason Debeshare hung out with people who did drugs and Jason Debeshare occasionally had some marijuana for his personal use and Jason Debeshare had 70 grams of marijuana that he intended to distribute. That's a really big leap. And the jury has to find not just that Jason had access to the house, that he came, and maybe he had access to all of these bongs and pipes and other things that were around, but they have to find that he actually had access to that safe. And that's something that the state didn't really prove up here, particularly if Ms. Boaz is believed. Now, that's going to be for a jury to decide once this goes back for a new trial and they no longer have that insinuation that, oh, well, Ms. Boaz is definitely lying. And in terms of other evidence in this case, the only real other evidence of Mr. Debeshare's guilt was his alleged statement, but we have two different stories from different law enforcement officers as to the contents of that statement. Inspector McVeigh says that Jason confessed, but Investigator Heppner, who was also in the room, says that he didn't hear any confession, so the jury is sort of stuck with trying to decide which law enforcement officer's recollection of the events is more accurate. It's not some sort of cut-and-dry case where there's all this evidence that, yes, Jason could definitely get into that safe. Now, if this were a case where it was Boaz who was on trial and she has the safe in her home, yeah, that looks pretty bad for her, but we've got to keep in mind, this is Jason Debeshare, who all of the testimony was, he stayed at this house about once, maybe two nights a week, so making that leap to him having the control over what's in Elizabeth's safe is a lot bigger leap than it might seem at first glance. Now, even if this court does not bring up Jason in a new trial, either on this issue or on the second issue raised in the briefs, a remand is still necessary. The parties agree that the public defender fee should be vacated, but there's still discussion over, one, whether there should be a remand on that issue, but, two, whether there should be a remand on the Crinkle issue. And I wanted to talk about this today because there seemed to be some confusion in the briefs. Mr. Debeshare is not trying to raise some claim of judicial misconduct before this court. The record's simply not, I'm sorry, not judicial misconduct, pure misconduct. The record simply isn't there for that sort of claim to be made at this point. Mr. Debeshare's claim in the trial court was that his trial counsel was ineffective for not doing something about potential juror misconduct, and our claim now is that the trial court erred in not conducting a Crinkle inquiry to learn more about that situation to determine whether possible neglect occurred or not. From the facts in Mr. Debeshare's petition, we know that he's claiming that something funky happened with a juror who had met an auxiliary police officer having some sort of conversations with jurors, or excuse me, witnesses who were also police officers. That could be a real problem. If these police officer witnesses were talking to an auxiliary police officer juror during the trial or about the subject matter of the trial, and defense counsel knew about it and did nothing, that's ineffective assistance. If this was merely after the trial, the juror said goodbye to the officers who he knew from work and there wasn't anything improper about it, or if defense counsel never knew about the conversations, then we don't have ineffective assistance of counsel. But we can't know because the trial judge didn't ask questions to find out what happened, did not ask the questions regarding this claim of the defendant, did not ask questions regarding this claim of the defense counsel. Without that knowledge, it was impossible for the judge to reliably reach his conclusion that, oh, well, this was just trial strategy, and that it was reasonable trial strategy when we just don't know. So did defense counsel burn up all his preemptory challenges? I believe he eventually did. He may have one left, but I believe he used all of them eventually. Following the auxiliary policeman? Yes. Yes. In all fairness, I mean, there's, in these smaller counties, there are a lot of people who either have law enforcement in their families or law enforcement just themselves, so it can be hard to just strike everybody who has a law enforcement connection in a smaller county. But here, this was an auxiliary police officer who said he could be fair and impartial, and he wound up on the jury. But then Mr. Demacher is saying that some sort of untoward conversation happened, and counsel did nothing, and the trial court just didn't ask about it. So the case needs to be sent back so those questions can be asked, and we can know, is there a possibility of neglect? Or is Mr. Demacher in some way mistaken about what happened and it was actually perfectly fine? So if this court does not grant us a new trial, which we believe should, then we ask at a minimum that the court remand the case to conduct this critical inquiry so we can determine whether there is a possibility of neglect. And we also ask that the public defender fee be vacated. If there are no further questions, thank you. Thank you. Mr. Ostell? The police court, counsel. The defendant first argues that the prosecutor insinuated that a photo existed that would prove the defense witness, Elizabeth Boas, was lying, and the prosecutor then failed to present evidence to substantiate the insinuation. The defendant claims he was prejudiced by the insinuation that a photo of Boas was in the safe. The defendant forfeited the decision on appeal because he did not object to the question of the trial, and neither defendant nor counsel raised the decision under respective motions for a new trial. Of course, the defendant is pointing to plain error, but the evidence is not close, and there is no potential structural error in this case. The defendant claims that if the jury believed Boas, it would not have believed, or rather it would have believed that the defendant did not have access to the safe. In his reply brief, the defendant asserts that the weight of the cannabis could exceed 30 grams as charged only if the cannabis from the safe was included in the total. The defendant presumes the jury believed Boas' testimony that she could not open the safe. People note that she mentioned that a person named Jay, who was a nephew of a friend of hers, provided the safe, brought it to her home, but the defendant did not produce Jay as a witness at a trial who could have backed up Boas' testimony and said, oh, yeah, exactly. We didn't give her a combination. We didn't give her a key. Assuming Jay really existed, what do you think the likelihood that Jay was going to come to the court and testify, hey, that safe, that was mine, I took it over there? Well, Jay wouldn't necessarily have to say that it was his safe that opened it, rather that he did give her a safe, you know, at that, you know. But I agree that if she didn't have the key or the combination, then it would be thrown onto him, potentially. So I understand your point, Your Honor. But no, one important point is that no one has any witness. The defendant had the combination to the safe, so the claim is without merit, generally. The people acknowledged in our brief that the prosecutor may not ask leading questions designed to impeach a witness by assuming facts, not in evidence, unless the people can present evidence supporting that in court. But any error is harmless if the outcome of the case would have been the same without the error. I think McVeigh testified that the officers couldn't locate the keys. There was no key that we know of. So is this a key-lock safe or a combination safe? Apparently it was both from the testimony. The record seems to indicate that it could have been opened either with a combination or a key because that was the testimony, that she didn't have a key or the combination. But about – No, there was a witness who said that. That was her. Ms. Boyce, yes. I thought she said there was no witness. Well, no one said that that defendant did not have a combination. Incomplete impeachment of a witness is a reversible error only where the insinuation is substantial, repeated, and definitely prejudicial. The people did not argue in opening or closing arguments that the photo of Boas was found in the safe. In his reply brief, the defendant claims that after the prosecutor's initial questions about her photo, the prosecutor's statement to Boas that he would get back to the subject again could only be a reference to the prosecutor's intent to address the issue in closing argument. Now, a support for the claim, the defendant notes that the prosecutor said in closing that Boas was wishy-washy in her responses, and the defendant emphasizes that the prosecutor stated that Boas seemed to tell part of the story but not all of it. That statement in closing did not raise any argument about the photo. Instead, the prosecutor was opining, based on Boas' testimony, that she did not tell the whole truth. Now, pages 21 through 23 of her brief, the people quoted the prosecutor's questioning of Boas in which Boas admitted that she may have lied to the police about the defendant being on the lease, and there was also examination in which the prosecutor asked follow-up questions regarding whether Boas discussed the contents of the safe with the defendant. Therefore, the prosecutor did return to the subject of the safe just as he said he would do, and Boas consistently denied any knowledge of her photo being in the safe. Prior to Boas' testimony, police officers had already testified about the safe's contents, and none of them stated that a photograph was found in the safe, and the exhibits admitted into evidence did not include any photograph of Boas. Now, given Boas' denial of the officer's testimony and the admitted exhibits showing that there was no photo found in the safe, no reasonable juror would have assumed that Boas' photo was found in the safe and any inference that it was there had no impact on her credibility. But isn't all that really a little bit, so what was the prosecutor thinking when he asked that question? What was the plan? I can't really speculate. Perhaps, you know, if I were to speculate, he was trying to elicit some sort of admission from her in some way. I don't understand what the point of that myself necessarily would have been. Now, in his reply brief, the defendant admits the jury could consider Boas' relationship with the defendant when judging her credibility. On cross-exam, Boas said that she and the defendant started dating again after he bonded out of jail in March of 2014, and they had lived together for one month from August through about September of 2014. But on a redirect, Boas then admitted that she was living with the defendant at the time of the trial in October of 2014. The evidence showed that Boas was in the house at the time of the search when drug packaging materials and paraphernalia were found in open view and cannabis was found in the kitchen cabinet. And Officer McVeigh testified in rebuttal that Boas did tell him that the defendant was on the lease, but in her testimony she said he was not on the lease at all. So we have a little bit of conflict there also. And the people submit that based on the facts of this case, Boas' testimony and her claim that she and the defendant did not speak about any aspect of this case other than the possible sins would have been considered suspect by the jury, and the record shows that any error made in the cross-examination of Boas was harmless. Well, you know, if you're harmless, it also makes it just a little more outrageous that you've done all that evidence and then you pull back. And that seems to be a problem. It was not a brilliant prosecutorial move, I'll say that, to imply that there was a photo, but it did not in any way show that Boas was lying. It didn't say that she knew, I'm sorry? I said at the time of trial the prosecutor must have thought it would because that could be the only reason he asked the question. Well, it appeared that he was, again I'm guessing, that he was attempting in some way to elicit information that would show that somebody in the household could access the safe. When he says, I'll get back to it, and he does, he's just saying, hey, didn't you lie about saying he was on a lease? And then she says, well, maybe, I don't know, there is no lease. And so he says, well, so you've been lying to the police. And she says, well, if they asked me anything, it would have been, did he live here, and I might have said yes, but it was just, and the prosecutor says, so you're lying to the police possibly about him being on the lease or you've lied us here about what you know about the safe. I mean, so again, going back to prior testimony, about some of this picture, would you be surprised if it was in here? I mean, he's alluding again to this testimony about the safe, and yet he doesn't have anything to support the question that he's asked, but he's now referencing her answer. She was absolutely consistent. She said, I don't know anything about what's in the safe. And we had the police officer's testimony that there was no photo in the safe. He admitted evidence taken from the safe. There was no photo of Ms. Boaz from the safe, and the jury knew that. So any inference? Well, how did they know other than they said, well, these are the things that were in the safe, but they draw attention and say, no, it doesn't include the photo that we referenced earlier, or they, you know. I believe it was three different officers that testified about the contents of the safe, and not one of them mentioned her photo. And all the exhibits were presented, these were all from the safe. Not one of them had a photograph. So the jury saw that. They knew there's no photograph. Well, I assume the defense attorney brought the attention of the jury to you, didn't he? No. He didn't. Oh, really? Oh. So in closing, he didn't say, by the way, you heard all the evidence. You heard what came out of that safe, all these people testifying, and there was no photo as counsel was present who was suggesting a cross-examination. As we said, it was not raised by defendant or defense counsel in an objection to trial or in post-trial motions. We're talking about, what, 70 grams of marijuana? Approximately, that was in the safe. A little less than three ounces. But more than 30 grams, as required by the charge. Right. And as far as the third issue that we raised, the defendant focused on this issue several times in a brief. Excellent jury police officer Kevin Kunstler was improperly communicating the law enforcement officers or witnesses during the trial, but that's not what his motion stated. He did not state that this juror was speaking to the officers during the course of the trial. It just said that he observed the jurors speaking with officers. We don't know when that occurred or anything along that line. It asserts that in the preliminary, correct inquiry, the trial judge did not specifically ask about the defendant's post-trial claim. They've seen it at the front door, but we don't know when that occurred. In his reply brief, this defendant asserts that Does it make a difference when that occurred in conversations? Well, yes. And the trial judge was aware of that, General Oberma? One would presume that the trial judge was aware of the law. The trial judge didn't ask anything about that, like when it occurred. Not that I recall. In reading the briefs, I didn't find any. I don't have the paper records, so I didn't have my notes with me. The real issue is that he didn't address the issue at all, that it was in this motion that the defendant filed, but that he just didn't address it. Well, part of the issue that we raise is that even if he had discussed it, he can't go back and it would be forfeited because if you don't raise those issues at trial, then you can't go back and wipe out the jury verdict. What he's saying is that his attorney was, you know, it was deficient performance because he didn't stop the trial. He didn't address it. And he's not talking so much about the juror. He's talking about his attorney's performance and there needing to be an inquiry about it and that there was not an inquiry on that issue, so we really don't know what he wanted to say. Like, hey, I told my lawyer I overheard a conversation that they were having and he didn't do it. We really don't know because it wasn't fleshed out at all. I mean, nothing was discussed. In his filing, the defendant did not state that he ever told his counsel about this issue at all or that counsel was even aware of it. So we can't find ineffective assistance based on his claim because he didn't make any. It was a very vague claim and he never made a claim that counsel knew anything about this or when it occurred. And in regard to this claim presented before the trial court, the trial court responded how? We didn't have a discussion on this particular claim that I recall. There was a discussion about the motion to suppress. That was not an issue. The judge found that the defendant's claim, this motion to suppress the contents of the statement would not show ineffective assistance because it would have been futile to raise such. And the judge noted that he presided at the trial and based on his own knowledge of the trial and the counsel's performance at the trial, the judge found that the defendant's claims would be without merit or matters of trial strategy. So he denied the motion at that time. Counsel has two minutes. And people stand on their brief for all of their argument. Ask this court to affirm the conviction unless you have other questions. Thank you. Ms. Mason, is there something about it? May I please report? Just a few quick issues I'd like to clear up. First, counsel heard that there was some evidence that Ms. Boaz was being dishonest because she said that she had lived with the defendant for about a month from August through September of 2014. And the state's trade-in makes up, but then she later says that she lived with the defendant at the beginning of the trial, so see, she's lying. The trial happened on October 6th, 2014. So before two months, but still within that one-month window. So there's not really any conflict in her testimony there. The court also asked whether anyone had testified that Jason did not have a combination. And, you know, the state has repeatedly said no one ever asked the question, did Jason have the combination to the safe? It's true that no attorney ever asked that question. However, when Elizabeth Boaz testified that she was the one who had obtained the safe from Jay and that Jay had not yet given her the keys or the combination to the safe, then the reasonable inference from that is that Jason, too, does not have the keys or the combination to that safe. Additionally, the burden was on the state to prove that Jason could get into that safe. So because the state never established that Jason had that combination or had keys to it or had access to the combination of keys, then that's not something that should be used against Jason to say that suddenly the evidence wasn't closely balanced. Now... Okay, just a clarification. So if I've got some kind of a ban and I take it over, let's say I take it to my friend's house and I say, put it in your safe until I want it back, yeah, sure. My friend puts it in their safe and I don't have the combination for that safe. And then the police come and they get that. Is it still mine? Can I still be charged or convicted for the contraband that's in that safe? It depends. If somebody introduces evidence of that conversation between you and your friend, then in effect they're introducing evidence that yes, you did have control over that safe because you had this buddy who could put things in the safe for you. So in that case, then yes, you can absolutely be convicted because through that proxy you have control over the contraband. But if the state doesn't introduce any evidence of that conversation and they just find marijuana or some other contraband in your friend's safe and then try to point the finger at you, they're going to have problems. And that's what they did here is they didn't actually establish that connection and Elizabeth Boas, well, if Elizabeth Boas is believed, she's the key. And that's why the prosecutor's improper insinuation is such a big deal. Well, I think really arguing, though, the connection between the contents of the safe can be linked to the defendant because the defendant is living on the premises. I don't know that they're... In the best case scenario, to counter what you're saying, that there's no evidence there, isn't that a reasonable inference that could be made? No, and that's... The case we set in the brief is People v. Brown. And if the... Let's say the marijuana in the kitchen cabinets, let's say that had exceeded 30 grams and it had actually been tested and found to be marijuana, then him having access to the house, staying there every couple of nights, it would be reasonable to infer that he had possession of that marijuana, that it was a knowing possession. But here we need to have the marijuana in the safe and his merely having access to the house does not establish that under People v. Brown because a safe is something that's more difficult to get into. If we were to go over to our friend's house and our friend has a bunch of marijuana in his safe and you go there to spend the night, do the holiday weekend, whatever, but you never have any access to get inside that safe, then you're certainly not guilty of possession of a controlled substance, just like Jason wouldn't be here. Now, is there evidence that Jason's smoked a little bit of marijuana, had some marijuana in his person? Absolutely. But is there evidence here? If you believe Elizabeth Boas that he possessed that marijuana in that safe, there's simply not. And that's why the insinuation was such a big deal in this case. And there was no reason for it. With regards to whether there was any evidence that a photograph was found anywhere, the state repeatedly says, oh, well, this is all here because the cops didn't find a photograph. Cops didn't find a photograph. The cops did find digital cameras. So here the jury is. They see this officer of this court, this guy who's elected to represent them, making this insinuation that this photograph exists and asking these questions about the photograph. And they know that there's those digital cameras there. That's going to affect the jury. That's exactly the situation that we had in Papal v. McCoy, where the prosecutor gets up with the power of the state behind him and makes insinuations that the defendant had made threats to the victim. No evidence to support him. But that in and of itself was enough to be air. Because when the prosecutor uses his power to make these sorts of insinuations and to bias a jury against a defendant, it's not a fair trial. That's what Mr. Devonshire deserves is a fair trial. If there are no further questions, we ask that this court give him one. Thank you. Thank you very much. Thank you both for your arguments here this afternoon. We'll take this matter under advisement. Richard, this position will be issued. And I see we will adjourn until 9 a.m. tomorrow. Thank you.